### In the Matter of J.M.

### No. 2–99–309–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 3, 2000.

Rehearing Overruled Sept. 14, 2000.

Richard A. Gladstone, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Anne Swenson, David M. Curl, Andrew Piel, Asst. Crim. Dist. Attys., Fort Worth, for appellee.

PANEL F: CAYCE, C.J.; DAY and LIVINGSTON, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

J.M., a juvenile, appeals the trial court's order modifying his prior disposition and committing him to the Texas Youth Commission (TYC). In his sole point on appeal, he contends the trial court erred in rejecting his self-defense theory to the State's allegation that he committed the offense of deadly conduct while on probation. We will affirm.

J.M. was placed on juvenile probation for the offense of criminal trespass. The trial court imposed a disposition of one year probation. As one of the conditions of his probation, J.M. was not to violate any laws. Subsequently, the State moved to modify the trial court's disposition, alleging that J.M. had violated the conditions of his probation by committing the offenses of aggravated assault and deadly conduct. *See* TEX. PENAL CODE ANN. §§ 22.02, 22.05 (Vernon 1994). Upon hearing on the motion, the trial court found, by a preponderance of the evidence, that J.M. violated the terms and conditions of his probation by engaging in deadly conduct. *See* TEX. FAM.CODE ANN. § 54.05(f) (Vernon Supp.2000). J.M. argues the evidence was sufficient to sustain his claim of self-defense to the alleged offense.

Initially, the State argues appellant's self-defense theory was not available to him at the hearing because he did not affirmatively plead the defense pursuant to rule 94 of the Texas Rules of Civil Procedure. TEX.R. CIV. P. 94. Although we agree with the State to the extent that juvenile proceedings are generally governed by the rules of civil procedure, we do not agree with its proposition that self-defense, in the context of a juvenile proceeding, is an "avoidance or affirmative defense" that must be pleaded. *See* TEX. FAM.CODE ANN. § 51.17; *compare Price v. Short*, 931 S.W.2d 677, 686 (Tex.App.—Dallas 1996, no writ) (holding affirmative defense of self-defense must be timely pled in response to civil battery claim). General rules of pleading in a purely civil matter cannot be applied across the board in juvenile proceedings, which are quasi-criminal in nature. *See, e.g., In re C.O.S.*, 988 S.W.2d 760, 765 (Tex.1999). In a criminal prosecution, a defendant's written pleadings are limited, and a criminal defendant is certainly not required to provide notice to the State of the defensive evidence or strategy he intends to rely on at trial. *See* TEX.CODE CRIM. PROC. ANN. arts. 27.02, 27.10

(Vernon 1989). Moreover, the rules of criminal procedure for discovery and the rules of evidence applicable to criminal cases apply in juvenile proceedings. *See* TEX. FAM.CODE ANN. § 51.17(b)-(c).

In the criminal context, self-defense is not an affirmative defense to a charged offense. *See* TEX. PENAL CODE ANN. §§ 2.03, 2.04, 9.31 (Vernon 1994 & Supp.2000); *Green v. State*, 891 S.W.2d 289, 296 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). It follows that the defense of self-defense is not an affirmative defense in the context of a juvenile proceeding where a minor is alleged to have violated a criminal statute. Because the cases cited by the State are not dispositive of the issue, we conclude that rule 94 is inapplicable to the defense of self-defense in juvenile proceedings and a minor alleged to have engaged in delinquent conduct may properly rely on the defense of self-defense without specially pleading the defense. We, therefore, address the merits of J.M.'s complaint.

At the hearing on the State's motion, J.M.' s mother testified that on the afternoon of May 9, 1999, J.M. and her older son Lonnie got into a fight. She stated that the fight began because J.M. opened mail belonging to Lonnie and because J.M. was behaving disrespectfully towards her. She stated that J.M. was using a cigarette lighter to light the bottom of a soda can and she asked him to stop, but he didn't. Lonnie interceded. J.M. cursed Lonnie, and asked Lonnie if he thought he could "whip" him. Lonnie struck J.M. once on the head and a scuffle ensued. She told them to "take it outside." At that point, J.M. threatened to get a knife and stab Lonnie, and J.M. went into the kitchen. J.M. grabbed an electric can opener, but she took it out of his hand. Lonnie was trying to hold J.M., but J.M. somehow managed to get a kitchen knife out of the dishwasher, and he lunged at Lonnie twice. The knife had about an eight-inch blade. Lonnie held J.M. by the wrist and shook the knife from his grasp. She went downstairs to call the police. Lonnie restrained J.M. until the police arrived. She agreed that Lonnie outweighed J.M. by about fifty pounds, but stated that J.M. was very strong.

Lonnie testified similarly to the events leading up to the incident. He stated that J.M. "jumped in [his] face," and that he hit J.M. once on the side of the head. They started wrestling. His mother told them to "take it outside," but J.M. would not go outside. They continued to struggle, and J.M. ran into the kitchen. J.M. said he was going to stab Lonnie. J.M. picked up the electric can opener, but his mother took it from him. J.M. then went to the dishwasher, opened it, and grabbed a knife. J.M. lunged at him twice. He grabbed J.M.'s hand and pushed J.M. against the wall. J.M. dropped the knife. He held J.M. until the police arrived. He testified that he weighs about 286 pounds and that J.M. weighs about 225 pounds. He stated that if J.M. had wanted to stop the fight, he would have stopped. He further testified that had J.M. run away, he would not have followed him.

J.M. testified that before the fight began he was angry because his mother and Lonnie had accused him of opening Lonnie's mail, but that he didn't do it. He drank a soda and began using a lighter to light the bottom of the can. His mother told him to stop three times, and he finally did. Nevertheless, Lonnie sent his girlfriend outside and he knew there was "going to be a problem." Lonnie cussed him and said he was "going to whip [his] ass." Lonnie said, "let's take it outside," and J.M. "got up in [Lonnie's] face." Lonnie then hit him repeatedly over fifteen times in the head. He was mad and threatened to stab Lonnie if Lonnie didn't leave him alone. Lonnie told him to go get the knife. J.M. went into the kitchen and Lonnie followed him to the door of the kitchen. He got a knife out of the dishwasher, but threw it down. Lonnie then grabbed him, slammed him to the wall, and held him until the

police came. He denied lunging or striking at Lonnie with the knife.

■ Following testimony and argument, the trial court found, by a preponderance of the evidence, that J.M. violated the terms of his probation by committing the offense of deadly conduct, and ordered J.M. committed to TYC. J.M. generally contends the State failed to prove the elements of deadly conduct and that the overwhelming evidence shows he acted in self-defense. Although it is unclear, we interpret J.M.'s complaint as a challenge to the factual sufficiency of the evidence to support the trial court's implied finding against his self-defense theory.

■ A trial court may modify its prior disposition in a juvenile case based on a finding that the juvenile engaged in delinquent conduct so as to commit the juvenile to TYC if the court, after a hearing, finds by a preponderance of the evidence that the child violated a reasonable and lawful order of the court. *See* TEX. FAM.CODE ANN. § 54.05(f). When reviewing a factual sufficiency challenge in a juvenile case, we consider the totality of the evidence to determine whether the evidence supporting the finding is so weak or the evidence contrary to the finding is so overwhelming that it is clearly wrong and unjust. *See In re H.G.,* 993 S.W.2d 211, 213 (Tex.App.—San Antonio 1999, no pet.); *In re S.H.,* 846 S.W.2d 103, 106 (Tex.App.—Corpus Christi 1992, no writ). The trial court is the exclusive judge of the credibility of the witnesses, may believe or disbelieve any witness, and may resolve any inconsistencies or contradictions in the testimony. *See In re S.H.,* 846 S.W.2d at 107. Moreover, juvenile courts are vested with a great amount of discretion in determining the suitable disposition of children found to have engaged in delinquent conduct, and this is especially so on hearings to modify disposition. *See In re M.A.L.,* 995 S.W.2d 322, 324 (Tex.App.—Waco 1999, no pet.); *In re J.L.,* 664 S.W.2d 119, 120 (Tex. App.—Corpus Christi 1983, no writ).

■ A person commits deadly conduct if he recklessly engages in conduct that places another in imminent danger of serious bodily injury. *See* TEX. PENAL CODE ANN. § 22.05. To justify deadly force in self-defense, the actor must show, among other things, that (1) a reasonable person in the actor's situation would not have retreated, and (2) he reasonably believed that the deadly force was immediately necessary to protect himself against the other's use or attempted use of deadly force. *See id.* § 9.32 (Vernon Supp.2000). Applying the factual sufficiency standard, we review all the evidence to decide whether the evidence supporting the trial court's implied finding against self-defense is so weak or the evidence probative of self-defense is so overwhelming that the trial court's finding is clearly wrong and unjust. The State has the burden of persuasion to disprove self-defense but not a burden of production, which means that the State must simply prove its case beyond a reasonable doubt. *See Saxton v. State,* 804 S.W.2d 910, 912 (Tex.Crim.App.1991).

Viewing all the evidence, both for and against the trial court's finding, we conclude the trial court's rejection of J.M.'s self-defense claim is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust under the facts of this case. We further conclude the evidence was factually sufficient to support the trial court's finding that J.M. engaged in deadly conduct. Consequently, the trial court was justified in finding by a preponderance of the evidence that J.M. violated a lawful court order by violating the conditions of his probation. We overrule J.M.'s point on appeal.

We affirm the trial court's judgment.