Gibbins v. Berlin

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-163-CV

SAMUEL RICHARD GIBBINS, APPELLANT

INDIVIDUALLY AND D/B/A 

DELANYA'S SMOKE PIT 

V.

GREGORY S. BERLIN AND ROBERT  APPELLEES

M. MERZ, INDIVIDUALLY AND

D/B/A FAIR GAME VENDING 

------------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

This is an appeal by Samuel Richard Gibbins (“Gibbins”), individually and d/b/a Delanya’s Smoke Pit, from a judgment in favor of Gregory S. Berlin (“Berlin”) and Robert M. Merz (“Merz”), individually and d/b/a Fair Game Vending, following a jury trial, wherein Gibbins asserts error by the trial court in two points:  (1) inclusion in the charge of the court of an improper instruction on self-defense or alternatively, the refusal by the trial court to include a question on the issue of self-defense, and (2) the absence of legally and factually sufficient evidence of past and future physical pain and mental anguish to support a judgment for Berlin and Merz.

II.  Background

A.  Round One—The Fight

This is the case of the double knock-out.  On the evening of August 10, 2001, Berlin and Merz visited the Smoke Pit, a restaurant and bar on the east side of Fort Worth.  The purpose of their visit was to inspect a jukebox that belonged to their business, Fair Game Vending, and that had been installed at the Smoke Pit for the previous five years.  They had each consumed four or five beers before getting to the restaurant but denied that they were intoxicated.  Upon arrival, they discovered that their jukebox was unplugged and turned to the wall because Gibbins, the Smoke Pit’s new owner, had purchased his own jukebox.  A disagreement ensued over the jukebox situation, and Berlin and Merz were asked by Gibbins to take their jukebox and leave.  The attempted jukebox removal killed the sound from Gibbins’s new jukebox, resulting in Gibbins telling them to leave and come back the next day.  Fisticuffs ensued, with Gibbins being the last man standing.  Gibbins and three eye witnesses testified that Berlin and Merz started the altercation when Berlin shoved Gibbins, but Berlin and Merz claimed Gibbins “sucker punched” them without warning.  The fight consisted of two punches.  Gibbins, a former golden glove fighter, hit Berlin once and broke his jaw, and then hit Merz and broke his jaw.  They were both down and out.

B.  Round Two—The Damages

As a result of the melee, Berlin suffered a broken jaw occasioned by swelling and bleeding.  His facial injuries necessitated the insertion of a metal plate, and his mouth was wired shut for several weeks.  He also received a fractured collarbone, damage to his shoulder, and lacerations to his face when he hit the floor.  He testified that he had continued to have pain in his collarbone and shoulder, numbness in his jaw, and had suffered disfigurement to his face.  Merz fared little better.  He likewise had a metal plate inserted in his jaw, his mouth was wired shut, and he was required to have oral surgery.  Merz testified that he continued to have pain and sensitivity in his jaw, and his face was disfigured. 

C.  Round Three—The Litigation

Berlin and Merz sued Gibbins for assault, claiming they had not laid a glove on him, and Gibbins counterclaimed against Berlin and Merz for trespassing and assault.  The case went to trial before a jury in November  2003, with Berlin and Merz still asserting assault and alleging conversion of their business equipment and personal property.  By the time of the charge conference, Gibbins had abandoned his counterclaim for assault and instead was requesting a question on self-defense, that is, legal justification for the alleged assault, or alternatively an instruction on self-defense.  The trial court ultimately asked the jury if Gibbins assaulted Berlin, and if he assaulted Merz, to which the jury answered both in the affirmative.  A conditional damage question followed, wherein Berlin was awarded $100,000 for past physical pain and mental anguish, $250,000 for future pain and mental anguish, $25,000 for disfigurement in the past, and $50,000 for impairment in the past.  Correspondingly, Merz was awarded $100,000 for past physical pain and mental anguish, $100,000 for future pain and mental anguish, $25,000 for disfigurement in the past, and $50,000 for impairment in the past.  Following the verdict, Gibbins filed a motion for judgment not withstanding the verdict, or alternatively for remittitur, and objections to the proposed judgment of Berlin and Merz.  In response, Berlin and Merz remitted a portion of their total verdict, resulting in an award of $212,500 to Berlin and $137,500 to Merz, exclusive of interest.  Motions for new trial were denied, followed by this appeal.  

III.  Charge of the Court

In his first point, Gibbins asserts error on the part of the trial court (1) by failing to give a question on self-defense and (2) by improperly wording the instruction on self-defense contained in the paragraph defining assault.

A.  The Standard of Review

Error in a jury charge is reversible if it probably caused the rendition of an improper judgment.  
Tex. R. App. P.
 44.1(a)
; 
In re D.I.B.
, 988 S.W.2d 753, 756 (Tex. 1999)
.  To preserve a complaint premised on the jury charge for appellate review, a party must point out distinctly the objectionable matter and the grounds for the objection.  
Tex. R. Civ. P.
 274.  The test for preservation of a jury charge complaint is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.  
Tex. R. App. P.
 33.1(a); 
see State Dep’t of Highways & Pub. Transp. v. Payne
, 838 S.W.2d 235, 241 (Tex. 1992) (op. on reh’g).  The court must review the entire record to determine whether the instruction amounted to reversible error.  
Quantum Chem. Corp. v. Toennies
, 47 S.W.3d 473, 480 (Tex. 2001); 
Urista v. Bed, Bath & Beyond, Inc.
, 132 S.W.3d 517, 521 (Tex. App.—Houston [1st Dist.] 2004, pet. filed).  An incorrect instruction is especially likely to cause reversible error when the evidence is conflicting and the issues hotly contested.  
Quantum Chem. Corp.
, 47 S.W.3d at 480; 
Urista
, 132 S.W.3d at 521. 
 

We review a trial court’s decision to submit an instruction for an abuse of discretion.  
Goose Creek Consol. Indep. Sch. Dist. v. Jarrar’s Plumbing, Inc
., 74 S.W.3d 486, 499 (Tex. App.—Texarkana 2002, pet. denied).  The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court’s action.  Rather, the question is whether the trial court acted without reference to any guiding rules and principles.  
Downer v. Aquamarine Operators, Inc
., 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).

B.  Charge of the Court

In its charge to the jury, the trial court asked in question 1a, “Did Samuel Richard Gibbins commit an assault against Gregory S. Berlin?”  The same question was asked as to Robert Merz in question 1b.  In the paragraph preceding that question, the court defined assault and instructed the jury on self-defense as follows:

A person commits an assault if he (1) intentionally, knowingly, or recklessly causes bodily injury to another; (2) intentionally or knowingly threatens another with imminent bodily injury; or (3) intentionally or knowingly causes physical contact with another when he or she knows or should reasonably believe that the other will regard the contact as offensive or provocative.  A person is justified in using force against another when and to the degree the person reasonably believes the force is immediately necessary to protect himself against the other’s use or attempted use of unlawful force.  A person has the right of self-defense against multiple assailants if, viewed from the person’s standpoint, the person believed he was in danger of an unlawful attack or a threatened attack at the hand of more than one assailant.

The definition of assault is the same, whether in a civil or criminal trial.  
Rogers v. Peeler
, 146 S.W.3d 765, 769 (Tex. App.—Texarkana 2004, no pet.) (citing 
Forbes v. Lanal
, 9 S.W.3d 895, 900 (Tex. App.—Austin 2000, pet. denied)).  A person commits assault under the Penal Code if the person intentionally, knowingly, or recklessly causes bodily injury to another.  
Tex. Pen. Code Ann
. § 22.01 (Vernon Supp. 2004-2005).  

Similarly, with the exception of the rule of evidence that gives a person accused of a crime the benefit of a reasonable doubt, the law of self-defense is the same in both civil and criminal cases.  
Forbes
, 9 S.W.3d at 900; 
Foster v. H.E. Butt Grocery Co.
, 548 S.W.2d 769, 771 (Tex. Civ. App.—San Antonio 1977, writ ref’d n.r.e.).  Under section 9.31 of the Penal Code, a person is justified in using force against another when, and to the degree, such person reasonably believes the force is immediately necessary to protect himself or herself against the other’s use or attempted use of unlawful force.  
Tex. Pen. Code Ann
. § 9.31(a) (Vernon 2003).  Whereas we recognize that in criminal law, self-defense is a justification and not an affirmative defense, in civil law it is a plea in confession and avoidance.  That is, it is an affirmative defense.  
Dotson v. State
, 146 S.W.3d 285, 292 (Tex. App.—Fort Worth 2004, no pet.); 
Price v. Short
, 931 S.W.2d 677, 687 (Tex. App.—Dallas 1996, no writ).

We agree that the instruction is erroneous for two reasons.  First, as worded, it fails to instruct the jury that they are to answer questions 1a and 1b “no” if they believe an assault was committed but that it was committed in self-defense or was justified.  Even if the jury believed an assault occurred and it was occasioned by self-defense or was justified as they were instructed on those issues in this charge by the court, they were asked in question one to answer only whether an assault occurred without reference to self-defense or justification.  Second, we believe the better practice and the appropriate method for handling self-defense in a civil assault case is to ask the jury a question concerning self-defense as opposed to including it in an instruction because (1) self-defense is a plea in confession and avoidance, that is, it is an affirmative defense that normally calls for a question to the jury as opposed to an inferential rebuttal, which is normally addressed by way of instruction in the court’s charge; (2) case law supports giving of separate questions on assault and self-defense, 
Norris v. Branham
, 557 S.W.2d 816, 817 (Tex. App.—El Paso 1977, writ ref’d n.r.e); and (3) it is basically a way of asking the jury if the actions were legally justified or excused, and justification/excuse is normally given as a question.  
See
 
Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges 
PJC 101.21, 106.3 (2003).  “The plea of self-defense then is one of justification.  It is based on a different set of facts from those establishing assault.  As an affirmative defense it is considered as acknowledging the existence of prima facie liability but asserting a proposition which, if established, avoids such liability.”  
Norris
, 557 S.W.2d at 818.

However, Berlin and Merz assert that the affirmative defense of self-defense was not pleaded prior to trial, and even if tried by consent, no trial amendment was requested.  As such, they assert no question was required to be given to the jury because jury questions must be supported by pleading.  We agree.  It is undisputed that Gibbins requested a question on self-defense:  “Did Samuel Richard Gibbins act in self-defense at the time . . . ?”  It is also undisputed that Gibbins never pleaded self-defense, which is an affirmative defense.  
In re J.M.
, 25 S.W.3d 364, 365 (Tex. App.—Fort Worth 2000, no pet.) (citing 
Price v. Short
, 931 S.W.2d 677, 686 (Tex. App.—Dallas 1996, no writ)).  Rule 278, Texas Rules of Civil Procedure, entitled Submission of Questions, Definitions, and Instructions, states in its first sentence that “[t]he court shall submit the questions, instructions, and definitions in the form provided by Rule 277, which are 
raised by the written pleadings 
and the evidence.”  
Tex. R. Civ. P.
 278 (emphasis supplied).  While Gibbins submitted the proposed question to the trial court on the issue of self-defense, which was rejected by the trial court and the instruction given, a trial court may refuse a tendered question for two reasons:  (1) there is no evidence to justify the submission or (2) the issue is not pleaded.  
Rivera v. Herndone Marine Prods., Inc
., 895 S.W.2d 430, 433 (Tex. App.—Corpus Christi 1995, writ denied) (citing 
Elbaor v. Smith
, 845 S.W.2d 240, 243 (Tex. 1992)).  This standard is equally applicable to offensive and defensive issues.  
Tanenbaum Textile Co. v. Sidran
, 423 S.W.2d 635, 638 (Tex. Civ. App.—Dallas 1967, writ ref’d n.r.e.).  Further, it is well settled that affirmative defenses must be pleaded pursuant to Rule 94 of Texas Rules of Civil Procedure.  This is also true in cases in which issues are tried by consent.  
McFadden v. Hale
, 615 S.W.2d 345, 348 (Tex. Civ. App.—Waco 1981, no writ).

Gibbins responds that Rule 67, Texas Rules of Civil Procedure, entitled Amendments to Conform to Issues Tried Without Objection, says that “[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they have been raised in the pleadings . . . provided that 
written pleadings
, before the time of submission, 
shall be necessary to the submission of questions, as is provided in Rules 277 and 279
.”  
Tex. R. Civ. P.
 67 (emphasis supplied).  However, Rule 279 is inapplicable to the question before the court, and Rule 277 no longer contains the language that Rule 67 implies is there concerning the submission of questions to the jury.  Prior to 1988, Rule 277 stated in part,  “In all jury cases the court may submit said cause upon special issues without request of either party, and upon request of either party, shall submit the cause upon special issues controlling the disposition of the case 
that are raised by the written pleadings 
and evidence in the case.” 
 661-662 S.W.2d (Tex. Cases) LXXVI, (1984, superseded 1988) (emphasis supplied).  

Gibbins asserts that the 1988 amendment eliminated the written pleading provision of Rule 277, and while the language was incorporated into Rule 278, Rule 67 does not refer to Rule 278.  Therefore, he argues that the written pleading requirement for submission of issues tried by consent has been eliminated and that because all cases cited by Berlin and Merz standing for that proposition were decided before the 1988 amendment took place, they are inapplicable.  We disagree with this position.  First, Rule 278 plainly says that the questions, instructions, and definitions submitted by the court must be raised by the written pleadings 
and 
the evidence.  
Tex. R. Civ. P.
 278 (emphasis supplied).  Were this phrase “written pleadings 
or
 the evidence,” it would support Gibbins’s argument, but it does not.  Second, Rule 67 retains the language that issues not raised by the pleadings but that are tried by consent “shall not affect the result of the trial of these issues . . . provided that 
written pleadings
, before the time of submission, 
shall be necessary
.”  
Tex. R. Civ. P.
 67 (emphasis supplied).  Third, the general commentary to that rule states that “by the time of submission any issues that are submitted 
must be based upon written pleading
.  Where this has not been before done submission, it is, of course, accomplished by amendment at the time of submission.”  
Tex. R. Civ. P.
 67. cmt.  Fourth, it is clear that the intent of the rules, as articulated in Rule 278, was to continue the requirement that issues submitted to the jury must be based upon the evidence 
and 
based on the written pleadings.  Fifth, case law since 1988 supports this position.  For example, the El Paso Court of Appeals has held that 

 while a general denial puts into issue all matters pled by the adverse party . . . it does not raise a defensive issue of excused performance such as that offered by Appellants in this case.  
Tex. R. Civ. P.
 278.  As Rule 278 . . . makes abundantly clear . . . 
a party is not entitled to the submission of a question which was at best raised only by general denial but not by affirmative pleadings, even though the issue might be tried by consent.

Anderson v. Vinson Exp., Inc
., 832 S.W.2d 657, 666 (Tex. App.—El Paso 1992, no writ) (emphasis supplied); 
see also Texas Capitals Sec., Inc. v. Sandefer
, 58 S.W.3d 760, 777 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (affirmative defense of statutory exemption from registration required by written pleading by Rule 278 before being submitted to the jury).

While acknowledging that this specific question concerning the omission of language from Rule 277 by the 1988 amendment may not have been raised in previous cases, this court holds that in cases tried by express or implied consent, a trial amendment containing affirmative defenses requested to be submitted to the jury is required to be filed prior to submission of the defensive issues to the jury.  As no such trial amendment was requested, Gibbins’s first point is overruled.

IV.  Physical Pain and Mental Anguish

In his second point, Gibbins asserts that the evidence of past physical pain and mental anguish and future physical pain and mental anguish was legally and factually insufficient to justify the awards to Berlin and Merz.

A.  Standard of Review

In determining a “no evidence” issue, we are to consider only the evidence and inferences that tend to support the finding of the disputed fact and disregard all evidence and inferences to the contrary.  
Bradford v. Vento, 
48 S.W.3d 749, 754 (Tex. 2001)
; Cont’l Coffee Prods. Co. v. Cazarez
, 937 S.W.2d 444, 450 (Tex. 1996);
 In re King's Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).  Anything more than a scintilla of evidence is legally sufficient to support the finding.  
Cont’l Coffee
, 937 S.W.2d at 450;
 Leitch v. Hornsby
, 935 S.W.2d 114, 118 (Tex. 1996).  More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.  
Rocor Int’l, Inc. v. Nat’l Union Fire Ins. Co.
, 77 S.W.3d 253, 262 (Tex. 2002).

A “no evidence” issue may be sustained only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999).
  

To withstand a “no evidence” challenge, circumstantial evidence still must consist of more than a scintilla.  
Blount v. Bordens, Inc.
, 910 S.W.2d 931, 933 (Tex. 1995).  A jury may not reasonably infer an ultimate fact from meager circumstantial evidence that could give rise to any number of inferences, none more probable than another.
  Hammerly Oaks, Inc. v. Edwards
, 958 S.W.2d 387, 392 (Tex. 1997).

An assertion that the evidence is “insufficient” to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all the evidence in the case in making this determination, not just the evidence that supports the finding.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).
  
Generally, we do not have to detail supporting evidence when upholding the factual sufficiency of the evidence underlying the trial court's judgment.  
Ellis County State Bank v. Keever
, 888 S.W.2d 790, 794 (Tex. 1994).

If the award is challenged as being excessive because there is factually insufficient evidence to support it, we should consider all the evidence that bears on that category of damages, even if the evidence also relates to another category of damages. 
 Golden Eagle Archery, Inc. v. Jackson
, 116 S.W.3d 757, 773 (Tex. 2003).  When conducting a factual sufficiency review, a court of appeals must not merely substitute its judgment for that of the trier of fact.  
Id. 
at 761
.  The trier of fact is the sole judge of the credibility of witnesses and the weight to be given to their testimony.  
Id
.

A jury is in the best position to see, hear, and evaluate the evidence and should be awarded great discretion in its determinations.  
Dawson v. Briggs
, 107 S.W.3d 739, 751 (Tex. App.—Fort Worth 2003, no pet.).  This is particularly true in damage awards for pain and suffering because there are no objective measures analyzing damages of this sort
, and for that reason it is best left to the province of the jury. 
 Id.
; 
see Hicks v. Ricado 
, 834 S.W.2d 587, 591 (Tex. App.—Houston [1st Dist.] 1992, no writ).  As this court noted in 
Dawson
, “once the existence of some pain and suffering has been established, there is no objective way to measure the adequacy of the amount awarded as compensation, which is generally left to the discretion of the fact finder
.”  Dawson
, 107 S.W.3d at 751.  While it is true that the mere fact of the existence of an injury does not prove compensable pain and suffering, 
Biggs v. GSC Enterprises, Inc
., 8 S.W.3d 765, 769 (Tex. App.—Fort Worth 1999, no pet.), it is also true that the evidence of continuing pain can support an award of future physical pain and mental anguish, 
Dawson
, 107 S.W.3d at 752; 
Rosenboom Machine & Tool, Inc. v. Machala
, 995 S.W.2d 817, 829 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); 
Durham Transp., Inc. v. Valero
, 897 S.W.2d 404, 414-15 (Tex. App.—Corpus Christi 1995, writ denied);
, and conversely, evidence of continually objective physical injuries precludes a take nothing verdict for future physical pain and mental anguish, 
Hicks
, 834 S.W.2d at 591. 

B.  The Evidence

The evidence of past and future physical pain and mental anguish for Berlin is not extensive.  Berlin testifies as follows:

Q.  Did you have damage to your right shoulder?

A.  My shoulder was even more painful than my jaw.  It was the clavicle or collar bone [that] was fractured and was dislocated.  They had to put it back in. 

. . . .

Q.  Where was your jaw broken?

A.  It was broken here (indicating).  That’s where they put the plate.  And also up here (indicating), I think they call it the condyle by your ear.  One time, after they cut the wires, it failed again, and then they had to tie it back up because it was broke in here (indicating). 

. . . .

Q.  Do you still have shoulder pain?

A.  I do.  In fact, one of the things I enjoy most in life is golf, and some days, you know, my backswing just kind of, to a small degree, the bones slip past each other, something kind of ratchets out of place, and it seems like it comes with [the] humidity. 

. . . .

Q.  And do you have loss of feeling in your jaw?

A.  I’ve got—the best I can describe it, it’s like a semicircle starting about here (indicating) coming down to my chin, yeah, over here (indicating).  And it’s like I saw the dentist earlier today.  You know, it’s like it’s still in Novocaine a little bit.  I guess it’s nerve damage.

Q.  Did you lose any teeth?

A.  Yeah, as a matter of fact . . . . So that nerve—that nerve died and gave me a lot of problem . . . .

. . . .

Q.  And when did you make the decision to go to the hospital?

A.  As soon as I got home and looked in the mirror.  I couldn’t believe what I saw.  I was shaken up and in some pain, mostly my shoulder, but I just could [not] believe what I saw in the mirror.

He also testified that the emergency room doctors wrestled and pushed his shoulder back in place, that the shoulder remained in a sling for over a month and he took pain medication for the pain, that excessive bleeding from his jaw forced him to sleep with his mouth open, and that he suffered mentally from looking at the damage to his face.

As to Merz the following evidence was introduced, also solely in the form of Merz’s own testimony: 

Q.  Do you remember getting punched?

A.  I just remember the dazed — dazed feeling, but it happened so quick, I don’t know.  

. . . .

Q.  And what part of your face did you get struck on?

A.  I don’t know if I got hit once or twice, but my jaw was broke.  There’s a plate here (indicating), and there was also a fracture up here (indicating) on the other side of my face.  That’s where all the swelling was. 

. . . .

Q.  Do you have a metal plate in your jaw?

A.  Yes. 

Q.  And that’s going to be there forever?

A.  Yes, I believe so.

. . . .

Q.  Do you have continued numbness in your jaw?

A.  Yeah, like Greg said, I have pretty much the same as he has all the way from — it’s mainly the bottom lip down through [here] (indicating) and up to here, it feels as though it’s novocaine.  It comes and goes.  It’s not constant, but the sensitivity comes and goes. 

. . . .

Q.  Have you felt personally conscience [sic] or conscientious about your outward appearance?  Does it bother you?  

A.  Well, every day I feel the numbness and, yeah, yeah, yes. 

He also testified that he required oral surgery for his jaw and that his mouth was wired shut for four weeks, that he continues to have problems with routine daily issues like eating, that he is concerned about his resulting appearance in which one side of his face is raised over the other and a “sloppy” smile.

Based on the foregoing, the jury awarded to Berlin and Merz $100,000 each for past physical pain and mental anguish and $250,000 and $100,000 respectively to Berlin and Merz for future physical pain and mental anguish.
(footnote: 1)  No expert testimony or documentary evidence such as medical records was introduced relevant to these issues.   

C.  The Application

Reviewing the evidence and bearing in mind our standard of review for legal sufficiency and that anything more than a scintilla of evidence is legally sufficient to support the findings, we conclude that the evidence is legally sufficient to support the jury’s award for past and future physical pain and mental anguish as to both Berlin and Merz.  Reviewing the evidence and bearing in mind our standard of review for factual sufficiency, and that a court of appeals must not merely substitute its judgment for that of the trier of fact, we conclude that the evidence is also factually sufficient to support the award of damages after remittitur to Berlin and Merz.  The jury determined that Gibbins won the fight but lost the purse.  Gibbins’s second point is overruled. 

V.  Conclusion—Review of the Justices’ Cards

Berlin and Merz win by a unanimous decision.  The judgment of the trial court is affirmed.

BOB MCCOY

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

DELIVERED:  March 31, 2005

FOOTNOTES
1:
Subsequently, the total awards for all elements of damages were reduced to $212,500 and $137,500 for Berlin and Merz, respectively, through remittitur.