COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-129-CV

 

 

SOUTHWESTERN BELL                                                         APPELLANT

TELEPHONE,
L.P.

 

                                                   V.

 

PAUL VALADEZ                                                                     APPELLEE

 

                                              ------------

 

            FROM
THE 96TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








In this appeal, Appellant
Southwestern Bell Telephone, L.P. (SWBT) raises seven issues challenging the
trial court=s judgment
on a jury verdict in favor of Appellee Paul Valadez.  In issues one, two, and three, SWBT claims
the evidence is legally and factually insufficient to support the jury=s findings on damages.  In issue
four, SWBT argues that the trial court erred by refusing to submit a jury
question on new and independent cause. 
In issues five, six, and seven, SWBT contends that the trial court erred
by denying SWBT=s motion for
directed verdict, motion for judgment notwithstanding the verdict (JNOV), and
motion for new trial, respectively.  For
the reasons set forth below, we will affirm the trial court=s judgment.

II.  Factual and Procedural Background








Valadez=s back yard contained a utility pole, and SWBT had determined that its
buried cable there Ahad become
unmanageable@ based on
customer complaints and had decided to replace it with an arial cable.  SWBT entered Valadez=s yard and dug up an underground Apedestal@ to access
its wires. Subsequently, Valadez went to retrieve some items from near a
storage shed in his back yard, and he accidently stepped into the hole made and
left by SWBT.  Valadez fell flat on his
face and was knocked unconscious by the fall. 
When he regained consciousness, Valadez felt pain in his left shoulder
and was unable to extricate himself from the hole.  Finally, Valadez used his cell phone to call
his son, who happened to be at Valadez=s house that day.  Valadez=s son came outside and assisted Valadez out of the hole and into the
house.  Valadez reported the incident to
SWBT, and two or three days later, three SWBT employees came to Valadez=s house and filled in the hole, covering the exposed wires.  The SWBT employees Aapologized profusely.@ 

Valadez experienced Abad@ pain in his
left shoulder and sought medical treatment for it at the emergency room on the
day of the fall.  Valadez was referred to
Dr. Persons, an orthopedic surgeon, who ordered an MRI and recommended surgery to
reattach some ligaments in Valadez=s shoulder.  Dr. Persons
performed the surgery approximately three weeks later. 








Approximately six months
prior to falling in the hole that SWBT had made in his yard, Valadez was in two
accidents.  First, he was in a minor hit
and run automobile accident, and second, he seriously injured his left foot at
work when a 6,000-pound electric hydraulic jack ran over him and pinned him
against the wall.  Valadez=s foot was crushed, and he developed hypersensitivity in his foot,
which required him to wear a special Bledsoe boot that prevented anything from
touching his foot.  Valadez was disabled
as a result of this accident.  Valadez
testified, however, that he did not seek treatment to his left shoulder as a
result of these accidents and that, although his left shoulder may have bumped
against the window in the car accident, it was not injured in either of these
prior incidents.  Valadez explained that
prior to the fall in the hole, he had no difficulty moving his shoulders or
arms, no difficulty raising his arms, no difficulty pulling objects toward him,
and no stiffness or pain in his shoulders, and he was not receiving therapy on
his left shoulder. 

After his fall in the hole
and the surgery on his left shoulder, Valadez experienced pain in his shoulder
and could not dress himself or take a shower by himself; he Ahad to be helped with virtually everything.@  About one month after his
shoulder surgery, the rubber on the sole of Valadez=s Bledsoe boot became dislodged, and he slipped on his tile floor at
home.  He fell backward and caught
himself Awith his back shoulder,@ which was his left shoulder, and re-injured it.  Valadez testified that he did not think this
accident would have caused any injury had he not already been recovering from
shoulder surgery on that shoulder. 
Valadez went to therapy for his shoulder three to four days a week for
two to three months.  His shoulder
improved, and he became able to shower and dress himself, though he was still
unable to perform some functions. 
Approximately four months after his boot caused him to slip and fall,
Valadez was involved in yet another accident; he was sitting on the tailgate of
a truck when both straps of the tailgate broke, causing him to fall to the
ground and injure his lower back. 

 

 

 








III.  Legal and Factual Sufficiency of the Evidence

A.     Standards of Review

We may sustain a legal sufficiency challenge only when (1)
the record discloses a complete absence of evidence of a vital fact, (2) the
court is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact, (3) the evidence offered to prove a
vital fact is no more than a mere scintilla, or (4) the evidence establishes
conclusively the opposite of a vital fact. 
Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.
1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 TEX. L. REV. 361, 362B63 (1960).  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable fact-finder could and
disregard evidence contrary to the finding unless a reasonable fact-finder
could not.  City of Keller v. Wilson,
168 S.W.3d 802, 807, 827 (Tex. 2005). 








An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the answer should be set aside and a new trial
ordered.  Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965).  We are
required to consider all of the evidence in the case in making this
determination, not just the evidence that supports the finding.  Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998).

B.     Past Medical Expenses

In its first issue, SWBT
claims that the evidence is legally and factually insufficient to support the
jury=s finding that Valadez has sustained $25,000 in past medical
expenses.  SWBT raises five subissues
under this issue, which we will address below.








A claim for past medical
expenses must be supported by evidence that such expenses were reasonably
necessary for the plaintiff to incur as a result of his injuries.  In re Mendez, 234 S.W.3d 105, 108
(Tex. App.CEl Paso
2007,  orig. proceeding) (citing Walker
v. Ricks, 101 S.W.3d 740, 746 (Tex. App.CCorpus Christi 2003, no pet.) and Transport Concepts, Inc. v.
Reeves, 748 S.W.2d 302, 305 (Tex. App.CDallas 1988, no writ)).  There
are two methods a plaintiff can utilize to prove the reasonableness and
necessity of past medical expenses:  (1)
expert testimony;  or (2) an affidavit
prepared and filed in compliance with section 18.001 of the Texas Civil
Practice and Remedies Code.  Tex. Civ. Prac. & Rem. Code Ann. ' 18.001
(Vernon Supp. 2007); Rodriguez-Narrera v. Ridinger, 19 S.W.3d 531, 532‑33
(Tex. App.CFort Worth
2000, no pet.).  Compliance with section
18.001, however, does not establish that the amount of the damages shown to be
reasonable and necessary was caused by the defendant=s negligence.  Sloan v.
Molandes, 32 S.W.3d 745, 752 (Tex. App.CBeaumont 2000, no pet.).

Turning to the present facts,
here Valadez filed five medical records affidavits in compliance with Texas
Civil Practice and Remedies Code section 18.001.  The medical billing affidavits proved up
approximately $60,406.82 in past medical expenses.[2]  SWBT did not file counteraffidavits disputing
the reasonableness or necessity of the medical expenses incurred by
Valadez.  See Tex. Civ. Prac. & Rem. Code Ann. '18.001(e) (providing that A[a] party intending to controvert a claim reflected by the affidavit
must serve a copy of the counteraffidavit. . . .@).  In the absence of a
counteraffidavit, the medical records affidavits suffice to support a fact
finding regarding the reasonableness and necessity of Valadez=s medical expenses.  See id.
'18.001(e); Owens v. Perez ex rel. San Juana Morin, 158 S.W.3d
96, 110 (Tex. App.CCorpus
Christi 2005, no pet.). 








Valadez testified that when
he fell in the hole left by SWBT, he fell on his right knee, left shoulder, and
face.  His knee was examined and was
determined to be fine.  But his left
shoulder was causing him great pain, and he was ultimately diagnosed with a
torn rotator cuff in his left shoulder, which required surgery and therapy.  Valadez testified that, prior to his fall in
the hole, he had no stiffness, pain, or mobility problems with his left
shoulder; he was not getting any therapy or treatment for his left shoulder;
and he did not have any kind of surgery scheduled for his left shoulder.  After the fall, he experienced all of
these.  Valadez specifically testified
that he did not seek medical treatment for his left shoulder as a result of the
minor Ahit and run@ accident he
experienced prior to his fall in SWBT=s hole. 













In three interrelated
subissues, SWBT contends that Valadez Adid not establish that the incident, which is the basis of this
lawsuit, caused his torn rotator cuff, and therefore the medical damages he
sought at trial,@ Adid not establish a sequence of events that produce[d] a strong,
logically traceable connection between the incident which is the basis of this
lawsuit and his alleged injuries,@ and Afailed to
introduce competent evidence establishing a causal link between his medical
billing affidavits and the incident which is the basis of this lawsuit.@  As we have mentioned, Valadez
specifically testified that his fall into SWBT=s hole caused him severe pain in his left shoulder.  On the day of the fall, Valadez sought
treatment in the emergency room for his left shoulder; he was referred to an
orthopedic surgeon, an MRI was performed, and Valadez was diagnosed with a torn
left rotator cuff, which was subsequently surgically repaired.  Instead of filing counteraffidavits, SWBT
relied upon the testimony of an expert it called via deposition, Dr. Van
Hal.  Although Dr. Van Hal opined that
the condition in Valadez=s left
shoulder was Adegenerative,@ he conceded that Valadez=s rotator cuff tear could have been asymptomatic prior to the fall and
have been Aexacerbate[d]@ and become symptomatic as a result of the fall.  To the extent, if any, that Dr. Van Hal=s testimony could be construed to limit Valadez=s past medical expenses for his left shoulder, we note that it is the
jury=s role to judge the credibility of the evidence, to assign the weight
to be given to testimony, and to resolve inconsistencies within or conflicts
among the witnesses=
testimony.  See Owens, 158 S.W.3d
at 110.  Applying the appropriate legal
and factual sufficiency standards of review, this evidence is legally and
factually sufficient to causally link all Valadez=s medical expenses for the care and treatment of his left shoulder, as
set forth in portions of the medical records attached to the medical records
affidavits, to SWBT=s negligence
as found by the jury.  See, e.g., Guevara
v. Ferrer, No. 05-1100, 50 Tex. Sup. Ct. J. 1182, 1187, 2007 WL 2457760, at
*5 (Tex. Aug. 31, 2007) (explaining that Anon-expert evidence alone is sufficient to support a finding of
causation in limited circumstances where both the occurrence and conditions
complained of are such that the general experience and common sense of
laypersons are sufficient to evaluate the conditions and whether they were
probably caused by the occurrence@); Byrd v. Delasancha, 195 S.W.3d 834, 837 (Tex. App.CDallas 2006, no pet.) (stating that the fact that the testimony of
causation comes from the injured party alone does not prevent it from having
probative force if given credit by the jury); see also Blankenship v. Mirick,
984 S.W.2d 771, 776-77 (Tex. App.CWaco 1999, pet. denied) (holding that evidence of causation was
legally and factually sufficient to support jury=s award of damages for appellee=s subsequent surgeries and treatments following automobile accident); City
of Dallas v. Allen, No. 05-01-00158-CV, 2002 WL 357165, at *2-3 (Tex. App.CDallas Mar. 7, 2002, no pet.) (not designated for publication)
(stating that testimony established a sequence of events which provided
traceable connection between collision and condition and holding that evidence
of causation was legally and factually sufficient to support jury=s award of damages based on injury to appellee=s elbow).








By way of a post-submission
brief, SWBT cites and relies upon the supreme court=s Guevara decision for the proposition that the evidence here
is insufficient to causally link Valadez=s medical expenses to SWBT=s negligence.  See 2007
WL 2457760, at *5.  In Guevara,
the supreme court held that, based on the particular facts presented in that
case, expert testimony was required to support a finding that an automobile
accident caused over $1 million of medical expenses for at least two abdominal
surgeries; three separate confinements in health care facilities; a great
variety and quantity of pharmaceutical supplies, medicines, and drugs; physical
therapy; and other expenses.  Id. at
*1, 5.  The supreme court in Guevara,
however, expressly refused to hold that such expert medical testimony is
required in every personal injury case:

Undoubtedly, the causal
connection between some events and conditions of a basic nature (and treatment
for such conditions) are within a layperson=s general experience and common sense. 
This conclusion accords with human experience, our prior cases, and the
law in other states where courts have held that causation as to certain types
of pain, bone fractures, and similar basic conditions following an automobile
collision can be within the common experience of lay jurors.

Id.








Here, Valadez proved that he
fell in a hole in his yard that had been made and left unfilled by SWBT.  Upon regaining consciousness after the fall,
Valadez immediately felt pain in his left shoulder.  Valadez and his wife both testified that
prior to the fall he had normal, painless use of his left shoulder and that
after the fall he experienced pain in his left shoulder and needed surgery on
it.  Thus, the causal connection here
between the eventCValade=z falling into the hole in his backyard that jury found was
negligently made and left unfilled by SWBTCand the immediate pain in his left shoulderCfor which he sought treatment, evaluation, and X-rays the day of the
fallCis within a layperson=s general experience and common sense. 
And ValadezCunlike
GuevaraCdoes not seek recovery of $1 million in medical expenses for surgeries
to areas and organs other than his left shoulder.  As more fully explained below, Valadez
specifically requested recovery from the jury of only the past medical expenses
related to his initial evaluation after the fall and to his left shoulder.  The supreme court=s holding in Guevara is consistent with our holding here that
the evidence is legally and factually sufficient to support the jury=s finding that Valadez incurred $25,000 in past medical expenses for
the treatment of his left shoulder and that this treatment was necessary as a
result of Valadez=s fall into
the hole negligently left unfilled by SWBT. 
We therefore overrule SWBT=s subissues (i), (ii), and (v) under its first issue.

SWBT next argues that Awhen the medical expenses [Valadez] testified were unrelated to the
incident which is the basis of this lawsuit [are subtracted from the total],
the total is less than the jury=s past medical expense award@; and that Athe
remaining medical expenses are intertwined such that it is impossible to
determine which charge relates to which of [Valadez=s] injury incidents.@  Starting with the total of
$60,406.82 reflected in Valadez=s medical billing affidavits, SWBT argues that at most, only
$22,151.85 of this amount was linked to his left shoulder injury and that,
thus, the jury=s award of
$25,000 is not supported by legally and factually sufficient evidence.  We disagree.








Valadez repeatedly testified
that he was seeking past medical expenses from SWBT only for the injuries he
sustained in the fall to his left shoulder and that he was not seeking recovery
for expenses associated with the April 23, 2003 re-injury to his left shoulder
that occurred when the rubber peeled off the bottom of his Bledsoe boot.  But, contrary to SWBT=s position that April 23, 2003 is a bright-line cutoff date after
which Valadez did not seek recovery of any past medical expenses, Valadez
testified that he was seeking recovery for the therapy expenses he
incurred, even after the April 23, 2003 date, because he would have had to
obtain that therapy on his left shoulder regardless of the re-injury.  Valadez testified:

Q.     The damages you=re seeking from Southwestern
Bell relate to the period [of] February 11th, 2003 until April 23rd,
2003?

 

A.     No, sir.

 

Q.     Which damages after April 23, 2003 are you asking the jury to
award you?

 

A.     Therapy, medical visits, pain and suffering through that time I
was - - I had the initial surgery and the initial problems and February 11th.

 








While at other places in the
record, Valadez appears to equivocate on this point, it was for the jury to
evaluate his testimony and the evidence and to determine the weight to attach
to it.  See, e.g., Bossier
Chrysler-Dodge II, Inc. v. Riley, 221 S.W.3d 749, 756 (Tex. App.CWaco 2007, pet. denied) (holding that, despite internal
inconsistencies in appellee=s own testimony about the nature of the representations that appellant
had made and after deferring to jury=s resolution of the issue which turned on conflicting evidence and
witness credibility, evidence was factually sufficient to support finding that
appellant made actionable misrepresentations); Ardoin v. Walker, 466
S.W.2d 595, 597  (Tex. Civ. App.CHouston [14th Dist.] 1971, no writ) (stating that, AWhile the testimony on vital points in this case is in direct
conflict, it is within the province of the jury to resolve conflicts and
inconsistencies in the testimony of a witness or between witnesses@ and that such rule is Aso well established that citation of cases seems to be unnecessary@).








The supreme court held in Texarkana
Memorial Hospital, Inc. v. Murdock, 946 S.W.2d 836, 839‑40 (Tex.
1997), that a plaintiff should only recover for past medical expenses arising
from treatment necessitated by the defendant=s negligence.  Here, Valadez
sought recovery from SWBT for only past medical expenses arising from treatment
he received in the emergency room the day of the fall and for the injury to,
treatment of, surgery on, and therapy on his left shoulder, an injury caused by
SWBT=s negligence.  Consequently,
this is not a case like Murdock in which the plaintiff is seeking
recovery of all of his medical expenses, even those not necessitated by the
injury attributable to the defendant=s negligence.  See id.  Although the medical records affidavits filed
by Valadez established reasonable and necessary medical expenses in the amount
of $60,406.82, Valadez asked the jury to award him only those amounts
attributable to his initial emergency room visit for the fall and to the care
for his left shoulder.  Thus, the
testimony and evidence presented here complies with the principles enunciated
in Murdock.








SWBT points out that on
cross-examination, Valadez was unable to segregate in dollar amounts the
portion of the past medical expenses reflected in each of the five medical
records affidavits as being attributable to his fall in SWBT=s hole.  But Valadez did testify
to most of these amounts on direct examination. 
And, moreover, it is clear from the content and dates of the entries in
most of the records whether the particular treatment was related to Valadez=s shoulder, and the jury was capable of examining the records and
making this determination for itself.  See
Republic Bankers Life Ins. Co. v. Pruitt, 495 S.W.2d 587, 591 (Tex. Civ.
App.CAmarillo 1973, writ ref=d n.r.e.) (concluding that jury=s findings were not contrary to the overwhelming weight and
preponderance of the evidence as to be clearly wrong after stating that, A[I]t is apparent that the jury opted to believe such portions of the
evidence, including testimony, medical records, and inferences therefrom,
leading to the conclusion that the cause of the illness resulting in the
hospitalization and surgery here involved was . . . an illness originating
after November 1, 1968@).  For these reasons, we overrule SWBT=s subissues (iii) and (iv) under its first issue and overrule SWBT=s first issue in toto.

C.     Past Physical Impairment

In its second issue, SWBT
challenges the legal and factual sufficiency of the evidence to support the
jury=s award of $5,000 in past physical impairment damages.  @[P]hysical impairment must be substantial and extend beyond any pain,
suffering, mental anguish, lost wages[,] or diminished earning capacity.@  Golden Eagle Archery, Inc.
v. Jackson, 116 S.W.3d 757, 772 (Tex. 2003).  A broad range of limitations on physical
activities have been upheld as compensable physical impairments.  See Patlyek v. Brittain, 149 S.W.3d
781, 787 (Tex. App.CAustin 2004,
pet. denied) (discussing examples of injuries or limitations that have been
held to be legally sufficient evidence of physical impairment, including
difficulty eating and communicating with others; continuing inability to sleep
due to sharp pains; inability to run, bicycle, participate in triathlons, and
play with children; past inability to walk and future difficulties in running,
standing, and climbing; inability to ascend or descend stairs or kneel and
difficulty in standing for long periods of time; loss of seventy‑five
percent of strength in left arm, which subsequently contributed to plaintiff=s falling, breaking her leg, and being confined to a wheelchair; and
difficulties performing yard work, car maintenance, and playing racquetball).








Here, Valadez testified that
after his left shoulder injury he could not dress or bathe himself.  He explained that he could no longer help out
around the house by washing clothes, folding clothes, making the bed, washing
the dishes, or putting up the dishes. 
Mrs. Valadez likewise testified that after her husband fell in the SWBT
hole and hurt his left shoulder, he was no longer able to do these things.  When Valadez completed his therapy on his
left shoulder, he gradually became able to accomplish these tasks again.  Applying the appropriate standards of review,
we hold that this uncontroverted testimony is legally and factually sufficient
to support the jury=s award of
$5,000 in past physical impairment damages. 
See, e.g., Patlyek, 149 S.W.3d at 787 (upholding $6,000 past
physical impairment jury award and citing other cases holding likewise).  We overrule SWBT=s second issue.

D.     Past Physical Pain and
Suffering








In its third issue, SWBT
challenges the legal and factual sufficiency of the evidence to support the
jury=s award of $15,000 in past physical pain and mental anguish damages to
Valadez.  The process of awarding damages
for amorphous, discretionary injuries such as mental anguish or pain and
suffering is inherently difficult because the alleged injury is a subjective,
unliquidated, nonpecuniary loss.  Dawson
v. Briggs, 107 S.W.3d 739, 750-51 (Tex. App.CFort Worth 2003, no pet.); Dollison v. Hayes, 79 S.W.3d 246,
253 (Tex. App.CTexarkana
2002, no pet.).  The process is not
readily susceptible to objective analysis. 
Dawson, 107 S.W.3d at 750-51. 
The presence or absence of pain, either physical or mental, is an
inherently subjective question.  Id.








Valadez testified that after
he fell in SWBT=s hole, he
experienced Abad@ pain in his left shoulder and stated, AI=ve never
felt pain like that in my life.@  He said that the pain
continued to get worse until he went to the emergency room for treatment.  Up until Valadez saw the orthopedic surgeon,
around a week to ten days after the fall, the pain did not improve; he said
that the pain Ahadn=t gotten any better and the pain was still there.@  About a week later, the
orthopedic surgeon told Valadez that the results of his MRI showed that he
needed surgery.  He had surgery
approximately two to three weeks after the MRI, which was approximately one
month after the fall.  Valadez was Astill in a lot of pain@ after the surgery.  He could
not move his shoulder.  Valadez testified
that he Ahad a lot of pain@ during therapy on his shoulder and that it was Aexcruciating pain.@  Viewing this testimony under
the appropriate standards of review, we hold that the evidence is legally and
factually sufficient to support the jury=s award of past physical pain and mental anguish to Valadez.  See, e.g., Gibbins v. Berlin, 162
S.W.3d 335, 345 (Tex. App.CFort Worth 2005, no pet.) (holding that evidence was legally and
factually sufficient to support jury=s award for past and future physical pain and mental anguish as to
appellees following assault); Wal-Mart Stores, Inc. v. Hoke, No.
14-99-00503-CV, 2001 WL 931658, at *10-12 (Tex. App.CHouston [14th Dist.] Aug. 16, 2001, no pet.) (not designated for
publication) (holding that evidence was legally and factually sufficient in
personal injury suit to support jury=s award for past physical pain and mental anguish as to appellee).

We overrule SWBT=s third issue. 

IV.  New and Independent Cause








SWBT claims in its fourth
issue that the trial court erred by refusing to instruct the jury on new and
independent cause.  AA new and independent cause is one that intervenes between the
original wrong and the final injury such that the injury is attributed to the
new cause rather than the first and more remote cause.@  Dew v. Crown Derrick
Erectors, Inc., 208 S.W.3d 448, 450 (Tex. 2006); Darwin v. Fugit,
914 S.W.2d 621, 626 (Tex. App.CFort Worth 1995, writ denied). 
The intervening cause relieves the original wrongdoer of liability for
negligence because the intervening negligence destroys Athe causal connection between [the original] negligence and the
plaintiff=s injury[.]@  Dew, 208 S.W.3d at 450
(holding that removal of an inadequate rope barrier around an open hole in the
floor of oil platform was foreseeable intervening force so that platform
erector was not entitled to new and independent cause jury instruction).  The purpose of a new and independent cause
instruction is Ato advise
the jurors, in the appropriate case, that they do not have to place blame on a
[particular defendant] to the suit@ if the true cause for the accident lies elsewhere.  Dillard v. Tex. Elec. Coop., 157
S.W.3d 429, 432 (Tex. 2005).  

Here, SWBT claims that the
re-injury of Valadez=s left
shoulderCthat occurred when he slipped on April 23, 2003, as a result of the
rubber peeling away from the bottom of his Bledsoe bootCwas a new and independent cause of Valadez=s left shoulder injuries.  But
Valadez stipulated that he was not asking the jury to award him damages for
anything (physical pain, past physical impairment, or past medical expenses)
after April 23, 2003, except for the physical therapy he underwent after that
date because that therapy was required as a result of his surgery prior to that
date.  And the trial court=s damage question to the jury instructed, @Do not include any amount for any condition not resulting from the
occurrence in question.@  Consequently, SWBT=s concernsCthat it
would improperly be held responsible for additional damages Valadez experienced
as a result of the April 23, 2003 re-injury to his left shoulderCwere adequately addressed both in Valadez=s stipulation presented in front of the jury and in the court=s charge.








Unless the record
demonstrates otherwise, we must presume that the jury followed the trial court=s instruction to Anot include any amount for any condition not resulting from the
occurrence in question,@ i.e., to
not include any amount for any condition resulting from the April 23, 2003
slip.  See, e.g., Golden Eagle
Archery, Inc., 116 S.W.3d at 771; Turner, Collie & Braden, Inc. v.
Brookhollow, Inc., 642 S.W.2d 160, 167 (Tex. 1982); Tesfa v. Stewart,
135 S.W.3d 272, 278-79 (Tex. App.CFort Worth 2004, pet. denied); Rendon v. Avance, 67 S.W.3d 303,
310‑11 (Tex. App.CFort Worth
2001, pet. granted, judgm=t vacated
w.r.m.).  SWBT does not point to any
evidence in the record, and we have located none, rebutting the presumption
that the jury followed the instruction given in the court=s charge telling them to not include as damages any amount for any
condition not resulting from the occurrence in question.  See, e.g., Tesfa, 135 S.W.3d at
278-79.  We overrule SWBT=s fourth issue.

V.  Motion for Directed Verdict and Motion for
JNOV

In its fifth and sixth
issues, SWBT contends that the trial court erred by denying SWBT=s motion for directed verdict and JNOV, respectively, because Athere was no competent evidence of a causal nexus between the alleged
incident and the medical expenses Appellee sought to recover@ and because AAppellee
failed, however, to offer any competent evidence demonstrating that any act or
omission of Appellant was a direct and proximate cause of any of his alleged
damages.@  








A JNOV is proper when a
directed verdict would have been proper. 
Tex. R. Civ. P. 301; Fort
Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 394 (Tex.
1991).  We review a trial court=s decision to deny a motion for a directed verdict and a motion for
JNOV under the legal sufficiency standard of review.  See Brown v. Bank of Galveston, Nat=l Ass=n, 963 S.W.2d 511, 513 (Tex. 1998), abrogated on other grounds by
Ford Motor Co. v. Ledesma, 51 Tex. Sup. Ct. J. 250, 2007 WL 4465732 (Tex.
Dec. 21, 2007).  That is, a trial court
properly denies a motion for a directed verdict and a motion for JNOV if,
looking at all the evidence in the light most favorable to the fact challenged
or the finding found by the jury, a reasonable trier of fact could have formed
a firm belief or conviction that the fact or finding was true.  City of Keller, 168 S.W.3d at
822.  We have already, in our analysis
and disposition of SWBT=s first
issue and its subissues, held that the evidence presented is legally sufficient
to establish a causal nexus between Valadez=s falling in SWBT=s hole and the left shoulder injury he suffered as a result.  Consequently, the trial court did not err by
denying SWBT=s motion for
directed verdict and motion for JNOV, which were both premised on the
contention that there was Ano evidence@ of such a
causal connection.  We overrule SWBT=s fifth and sixth issues.

 

 

 








VI.  Motion for New Trial

In its seventh issue, in a
three-sentence argument in its brief, SWBT sets forth its entire argument and
authorities for this issue as follows:

Appellant
timely moved for new trial on the grounds set forth herein.  The Trial court denied that motion.  For the reasons set forth herein, that ruling
was erroneous, and this Court should reverse the trial Court and remand for
further proceedings.

 

We interpret SWBT=s above statement that Afor the reasons set forth herein, that ruling was erroneous@ to mean that for the reasons SWBT has already articulated in its
brief, we should reverse the trial court=s judgment.  Because we have
already addressed each of the Areasons@ for
reversal raised by SWBT, this seventh issue adds nothing; it presents no new
basis for reversal of the trial court=s judgment.  Accordingly, we
overrule SWBT=s seventh
issue.

VII.  Conclusion

Having overruled each of SWBT=s issues, we affirm the trial court=s judgment.

 

SUE
WALKER

JUSTICE

 

PANEL B:   LIVINGSTON, WALKER, and MCCOY, JJ.

DELIVERED: February 14, 2008











[1]See Tex.
R. App. P. 47.4.





[2]SWBT does not contest this total
amount but argues that the amount awarded by the jury is not supportable for
the reasons itemized above.