REPUBLIC BANKERS LIFE INSURANCE COMPANY, Appellant,

v.

James H. PRUITT, Appellee.

No. 8277.

Court of Civil Appeals of Texas, Amarillo.

May 14, 1973.

Rehearing Denied June 11, 1973.

Beard & Kultgen, Thomas L. Cook, Waco, for appellant.

Walters & Associates, William F. Warnick, Lubbock, for appellee.

ELLIS, Chief Justice.

In our original opinion we held that the judgment should be reversed and the cause remanded to the trial court on the basis of our conclusion that Republic Bankers Life Insurance Company, the insurer, was entitled to a jury submission specifically including the pleaded exclusionary period covering illnesses originating prior to the effective date of the medical, surgical and hospitalization insurance policy issued to James H. Pruitt, the insured, although, by implication, such exclusion was negatived by the jury's findings on other issues submitted. 483 S.W.2d 686 (Tex.Civ.App.—Amarillo 1972).

The Supreme Court disagreed "with the conclusion . . . that the pleaded policy exclusions were not fairly negatived under the procedural record here, together with the findings of the jury in response to the special issues as submitted." 491 S.W.2d 109 (Tex.1973). The case was remanded to this court for consideration of points not covered in our previous opinion. In our opinion on remand we have given careful consideration to the "no evidence" and "insufficiency of the evidence" points raised by the appellant.

Preliminarily, in considering the case from the perspective of the evidentiary questions raised, we deem it appropriate to review briefly the background for the issues submitted, the jury's responses and the specific points of error submitted. The insured, James H. Pruitt, instituted suit against Republic Life Insurance Company to recover hospital, surgical and medical expenses incurred by his wife, Evelyn Pruitt, during a hospitalization period beginning June 11, 1969, and terminating upon her death on June 29, 1969. The policy was issued on May 1, 1968. The insurance company pleaded exclusions contained in the policy to the effect that the sickness or disease that caused Mrs. Pruitt's hospi-

talization and surgery originated prior to the effective date of the policy and not more than six months after the policy had been in force. Among other matters, the insuring clause of the policy provides that coverage is afforded for sickness that originated after the policy had been in force for more than fifteen days.

The jury made the following findings in response to the respective issues submitted concerning Mrs. Pruitt's illness, hospitalization and surgery here involved:

*Special Issue No. 1*—She contracted a sickness or disease more than 15 days after May 1, 1968, the date of issuance of the policy;

*Special Issue No. 2*—She was required to be hospitalized because of a sickness or disease contracted more than six months after May 15, 1968;

*Special Issue No. 3*—On or about June 11, 1969, she underwent a surgical operation or procedure the cause for which originated more than six months after May 1, 1968; and

*Special Issue No. 8*—The real and compelling cause for the hospitalization loss sought to be recovered by the plaintiff was not an ulcer or other disease that was contracted within six months from the date of the issuance of the insurance policy, under the instruction that "the term 'real and compelling cause' meant a cause that was not contributed to in whole or in part by a disease or sickness that originated within six months from the date of policy issuance, but it is not required to be shown that the excluded disease had no effect whatsoever on the hospitalization loss to be recovered."

Thus, the net effect of the jury's findings is that Mrs. Pruitt was hospitalized on June 11, 1969, because of a sickness or disease that was contracted more than six months after the effective date of the insurance policy, i. e., after November 1, 1968, and therefore her illness and the cause for the hospitalization did not origi-

nate within any exclusionary period of the policy.

The appellant's "no evidence" points are set out in its points of error nos. IV–VIII. In its point no. IV, the appellant contends that the trial court erred in overruling its motion for judgment non obstante veredicto because the evidence shows Mrs. Pruitt was hospitalized on June 11, 1969, for a gastric ulcer and that she had such gastric ulcer on April 2, 1968, May 9, 1968, and on June 11, 1969. The appellee contends that there was evidence of probative force to the effect that Mrs. Pruitt was hospitalized on June 11, 1969, for a liver condition or a new and different ulcer that originated after the expiration of the exclusionary periods of the policy. Under Rule 301, Texas Rules of Civil Procedure, a party is entitled to a judgment non obstante veredicto only if an instructed verdict would have been proper, Houston Fire & Casualty Insurance Co. v. Walker, 152 Tex. 503, 260 S.W.2d 600, 603 (1953), and a directed verdict is never justified except when there is no evidence. Montgomery Ward & Co. v. Randio, 419 S.W.2d 407 (Tex. Civ.App.—Beaumont 1967, writ ref'd n. r. e.). Thus, the appellant's attack upon the trial court's action in overruling the motion for judgment non obstante veredicto is to be regarded as a "no evidence" point. Smith v. Texas Pipeline Co., 455 S.W.2d 346 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.) ; Shelton v. Ector, 364 S.W.2d 425, 428 (Tex.Civ.App.—Dallas 1963, no writ).

In appellant's points nos. V, VI and VII, it contends that the court erred in submitting special issues nos. 1, 2, 3 and 8 to the jury because there was no evidence of probative force to support the jury's respective findings to such issues so submitted. In its point no. VIII, the appellant complains that the court erred in rendering judgment for the appellee because there is no evidence of probative force to support the findings and verdict of the jury to special issues nos. 1, 2, 3 and 8, and insists that the uncontradicted evidence shows that the illness or sickness for which Mrs. Pruitt was hospitalized on June 11, 1969, and for which she had surgery was an ulcer which originated before November 1, 1968 (within the exclusionary period).

In appellant's point no. IX the appellant asserts that the court erred in rendering judgment for the appellee because the verdict of the jury to special issues nos. 1, 2, 3 and 8 is contrary to the overwhelming weight and preponderance of the evidence so as to be clearly wrong. In this connection, the appellant insists that the weight and preponderance of the evidence shows that Mrs. Pruitt was hospitalized on June 11, 1969, for an ulcer originating before November 1, 1968.

A review of the evidence discloses that Mrs. Pruitt, age sixty, was admitted to West Texas Hospital in Lubbock, Texas, on June 11, 1969, and that Dr. Edwin Davis, a practicing doctor of medicine and surgeon performed surgery on her on June 13, 1969. The surgery consisted of subtotal gastric resection and biopsy of the liver. The preoperative diagnosis related to the surgery was gastric ulcer and a strong suspicion of gall bladder disease. Doctor Davis' first contact with Mrs. Pruitt was during the course of a previous hospitalization period in West Texas Hospital beginning on April 2, 1968, during which period he saw her in consultation for several days.

In Doctor Davis' interrogatory testimony, he stated that the presence or strong suspicion of a gastric ulcer was established in April, 1968 and again in June, 1969, and that he first learned that Mrs. Pruitt was suffering from cirrhosis of the liver at the operating table on June 13, 1969. In his "Discharge Summary" pertaining to Mrs. Pruitt, as set out in the medical records, Doctor Davis noted:

"This patient was admitted for her chronic ulcer disease. At surgery she was found to have a *very severe degree of cirrhosis which had not been suspected preoperatively.*" (emphasis added)

Also, in his interrogatory testimony, Doctor Davis testified that following the April, 1968 admission to the hospital, there was subsequent evidence of good healing of the ulcer as determined by follow-up visits by Mrs. Pruitt to the office and x-ray studies made on May 9, 1968. He further stated that to the best of his knowledge Mrs. Pruitt required no medical help related to that problem between June of 1968 and early June of 1969. Further, we find the following in Doctor Davis' interrogatory testimony:

"QUESTION: Can you say within terms of reasonable medical probability whether the severity of Mrs. James H. Pruitt's condition necessitated surgical procedures before or after November 1, 1968?

"ANSWER: A diagnostic esophagostomy was performed by another physician in April of 1968. Surgery was not otherwise performed or recommended to the patient prior to June, 1969, as far as I know."

In Doctor Davis' final diagnosis regarding Mrs. Pruitt's condition, as set out in the above mentioned discharge summary, the following was noted:

"Benign gastric ulcer.
Laennec's cirrhosis of the liver."
rhosis of the liver."

Also, the discharge summary contained the following statement:

"Death occurred quite abruptly without apparent warning or prodromata. An autopsy was performed but the only significant findings were related to the far advanced cirrhosis."

The record further discloses that Dr. Travis Bridwell treated Mrs. Pruitt in April, 1968, for gastric ulcer with G. I. bleeding, possible gastric carcinoma and other ailments, and that she was admitted to West Texas Hospital for such ailments on April 2, 1968, and dismissed on April 9, 1968. Also, the record shows that she was re-admitted to West Texas Hospital for gastric ulcer with G. I. bleeding and other problems, including diverticulosis, on May 6, 1968, and remained in the hospital until May 13, 1968. Included in Doctor Bridwell's final diagnosis report on May 13, 1968, (shown in the medical records) is the notation of "healing gastric ulcer." His diagnosis preceding the June, 1969 operation contained the statement that he had no reasons to be suspicious of peptic ulcer symptoms recently. (In this same report, dated June 11, 1969, he had referred to the former ulcer condition for which she was hospitalized from May 6, 1968 to May 13, 1968 as "peptic" ulcer disease).

The other medical testimony is that of Dr. John P. Ray, Jr., a pathologist, who performed an autopsy on Mrs. Pruitt on June 29, 1969. His report set out in the medical records states:

"BASIC DISEASE AND CAUSE OF DEATH:
"1. CIRRHOSIS MACRONODULAR STAGE 4

*    *    *    *    *    *

"FINAL AUTOPSY SUMMARY

"This represents a case of severe cirrhosis of the liver, stage 4 . . . of the type most frequently at least associated with previous viral hepatitus."

Doctor Ray further testified that he thought that the cirrhosis in this particular case was viral; that the injury due to a virus can come along very quickly and that it could happen in less than a year from the date of a person's death. In response to a question as to whether it could happen in less than six months, his reply was "Yes, I have seen it within a month, personally."

The non-medical evidence included the testimony by the appellee, James H. Pruitt, husband of Mrs. Pruitt, deceased, and her son, Harvie Pruitt, who testified that her health was good the last year of her life

until shortly before the hospitalization on June 11, 1969. The son, Harvie Pruitt, testified that he didn't know she had cirrhosis of the liver or gastric ulcer before she went into the hospital.

It is well established that in determining "no evidence" points, "all evidence must be considered in a light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in such party's favor." Harbin v. Seale, 461 S.W.2d 591 (Tex.1970). From a review of the evidence, we have concluded that there was sufficient testimony and evidence—certainly more than a scintilla—to justify the overruling of the motion for judgment non obstante veredicto and the submission of special issues nos. 1, 2, 3 and 8 to the jury. It is well established that a jury is entitled to believe all, part or none of the testimony of any witness and draw its own conclusions therefrom. Further, the jury may consider all of the circumstances together with the reasonable inferences therefrom. Additionally, the jury may reach its conclusion by blending all evidence before it, and it is not required to credit all testimony of any witness. Martin v. Gurinsky's Estate, 377 S.W.2d 710 (Tex.Civ.App.—Austin 1964, writ ref'd n. r. e.).

In this case, it is apparent that the jury opted to believe such portions of the evidence, including testimony, medical records, and inferences therefrom, leading to the conclusion that the cause of the illness resulting in the hospitalization and surgery here involved was not a continuity of the April, 1968 ulcer, but an illness originating after November 1, 1968. There is evidence that Mrs. Pruitt had cirrhosis of the liver, first discovered by Doctor Davis on the operating table and not previously suspected by him. Cirrhosis of the liver was given as one of the causes of death by Doctor Davis, and assigned as the cause of death by Doctor Ray. Additionally, Doctor Ray testified that it was his opinion that the cirrhosis was of the viral,

quick acting type, and he had seen it come on as quickly as within a month prior to a patient's death. Although there is no direct evidence as to the time of inception or origination of the cirrhosis, the jury had before it the testimony of Doctor Ray to the effect that this cirrhosis was of the viral, fast acting type. This testimony by Doctor Ray coupled with the unexpected discovery of severe cirrhosis by Doctor Davis support the jury's conclusion that Mrs. Pruitt died from an illness originating after November 1, 1968. Further, the testimony of Doctor Davis with respect to the "good healing" and that to the best of his knowledge Mrs. Pruitt required no medical help relating to her ulcer problem for approximately the last year prior to her latter hospitalization, the June, 1969 diagnosis by Doctor Bridwell expressing lack of suspicion of "peptic ulcer," and the corroborative lay testimony of Mrs. Pruitt's husband and son to the effect that she had been in good health for the last year, reasonably constitute evidence of probative force to support an inference that the illness and "real and compelling cause" of the latter hospitalization and surgery was not a continuation of the April, 1968 ulcer condition, but was the result of illness originating after November 1, 1968. From our consideration of the foregoing evidence, it is our opinion that appellant's "no evidence" points are not sustainable.

From a review of not only the evidence favorable to the jury's findings and verdict, but after giving consideration to all of the testimony, medical records, circumstances and reasonable inferences therefrom, as required, In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951), we have concluded that the jury's findings in response to special issues nos. 1, 2, 3 and 8 are not contrary to the overwhelming weight and preponderance of the evidence so as to be clearly wrong.

For the reasons above stated, we overrule appellant's points of error nos. IV–IX, and hold that there is sufficient evidence of probative force to support the submis-

**592**

sion of special issues nos. 1, 2, 3 and 8 to the jury; that the evidence is sufficient to support such jury's findings; and that such findings are not contrary to the overwhelming weight and preponderance of the evidence so as to be clearly wrong.

In view of our consideration and disposition of the points for which this case was remanded to this court, the judgment of the trial court is affirmed.