COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-129-CV

SOUTHWESTERN BELL APPELLANT

TELEPHONE, L.P.

V.

PAUL VALADEZ APPELLEE

------------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In this appeal, Appellant Southwestern Bell Telephone, L.P. (SWBT) raises seven issues challenging the trial court’s judgment on a jury verdict in favor of Appellee Paul Valadez.  In issues one, two, and three, SWBT claims the evidence is legally and factually insufficient to support the jury’s findings on damages.  In issue four, SWBT argues that the trial court erred by refusing to submit a jury question on new and independent cause.  In issues five, six, and seven, SWBT contends that the trial court erred by denying SWBT’s motion for directed verdict, motion for judgment notwithstanding the verdict (JNOV), and motion for new trial, respectively.  For the reasons set forth below, we will affirm the trial court’s judgment.

II.  Factual and Procedural Background

Valadez’s back yard contained a utility pole, and SWBT had determined that its buried cable there “had become unmanageable” based on customer complaints and had decided to replace it with an arial cable.  SWBT entered Valadez’s yard and dug up an underground “pedestal” to access its wires. Subsequently, Valadez went to retrieve some items from near a storage shed in his back yard, and he accidently stepped into the hole made and left by SWBT.  Valadez fell flat on his face and was knocked unconscious by the fall.  When he regained consciousness, Valadez felt pain in his left shoulder and was unable to extricate himself from the hole.  Finally, Valadez used his cell phone to call his son, who happened to be at Valadez’s house that day.  Valadez’s son came outside and assisted Valadez out of the hole and into the house.  Valadez reported the incident to SWBT, and two or three days later, three SWBT employees came to Valadez’s house and filled in the hole, covering the exposed wires.  The SWBT employees “apologized profusely.” 

Valadez experienced “bad” pain in his left shoulder and sought medical treatment for it at the emergency room on the day of the fall.  Valadez was referred to Dr. Persons, an orthopedic surgeon, who ordered an MRI and recommended surgery to reattach some ligaments in Valadez’s shoulder.  Dr. Persons performed the surgery approximately three weeks later. 

Approximately six months prior to falling in the hole that SWBT had made in his yard, Valadez was in two accidents.  First, he was in a minor hit and run automobile accident, and second, he seriously injured his left foot at work when a 6,000-pound electric hydraulic jack ran over him and pinned him against the wall.  Valadez’s foot was crushed, and he developed hypersensitivity in his foot, which required him to wear a special Bledsoe boot that prevented anything from touching his foot.  Valadez was disabled as a result of this accident.  Valadez testified, however, that he did not seek treatment to his left shoulder as a result of these accidents and that, although his left shoulder may have bumped against the window in the car accident, it was not injured in either of these prior incidents.  Valadez explained that prior to the fall in the hole, he had no difficulty moving his shoulders or arms, no difficulty raising his arms, no difficulty pulling objects toward him, and no stiffness or pain in his shoulders, and he was not receiving therapy on his left shoulder. 

After his fall in the hole and the surgery on his left shoulder, Valadez experienced pain in his shoulder and could not dress himself or take a shower by himself; he “had to be helped with virtually everything.”  About one month after his shoulder surgery, the rubber on the sole of Valadez’s Bledsoe boot became dislodged, and he slipped on his tile floor at home.  He fell backward and caught himself “with his back shoulder,” which was his left shoulder, and re-injured it.  Valadez testified that he did not think this accident would have caused any injury had he not already been recovering from shoulder surgery on that shoulder.  Valadez went to therapy for his shoulder three to four days a week for two to three months.  His shoulder improved, and he became able to shower and dress himself, though he was still unable to perform some functions.  Approximately four months after his boot caused him to slip and fall, Valadez was involved in yet another accident; he was sitting on the tailgate of a truck when both straps of the tailgate broke, causing him to fall to the ground and injure his lower back. 

III.  Legal and Factual Sufficiency of the Evidence

A. Standards of Review

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362–63 (1960)
.  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could and disregard evidence contrary to the finding unless a reasonable fact-finder could not.
  
City of Keller v. Wilson
, 
168 S.W.3d 802, 807, 827
 (Tex. 2005). 

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

B. Past Medical Expenses

In its first issue, SWBT claims that the evidence is legally and factually insufficient to support the jury’s finding that Valadez has sustained $25,000 in past medical expenses.  SWBT raises five subissues under this issue, which we will address below.

A claim for past medical expenses must be supported by evidence that such expenses were reasonably necessary for the plaintiff to incur as a result of his injuries.  
In re Mendez
, 234 S.W.3d 105, 108 (Tex. App.—El Paso 2007,  orig. proceeding) (citing 
Walker v. Ricks
, 101 S.W.3d 740, 746 (Tex. App.—Corpus Christi 2003, no pet.) and 
Transport Concepts, Inc. v. Reeves
, 748 S.W.2d 302, 305 (Tex. App.—Dallas 1988, no writ)).  There are two methods a plaintiff can utilize to prove the reasonableness and necessity of past medical expenses:  (1) expert testimony;  or (2) an affidavit prepared and filed in compliance with section 18.001 of the Texas Civil Practice and Remedies Code.  
Tex. Civ. Prac. & Rem. Code Ann
. §
 18.001 (Vernon Supp. 2007); 
Rodriguez-Narrera v. Ridinger
, 19 S.W.3d 531, 532-33 (Tex. App.—Fort Worth 2000, no pet.).  Compliance with section 18.001, however, does not establish that the amount of the damages shown to be reasonable and necessary was caused by the defendant’s negligence.  
Sloan v. Molandes
, 32 S.W.3d 745, 752 (Tex. App.—Beaumont 2000, no pet.).

Turning to the present facts, here Valadez filed five medical records affidavits in compliance with Texas Civil Practice and Remedies Code section 18.001.  The medical billing affidavits proved up approximately $60,406.82 in past medical expenses.
(footnote: 2)  SWBT did not file counteraffidavits disputing the reasonableness or necessity of the medical expenses incurred by Valadez.  
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 §18.001(e) (providing that “[a] party intending to controvert a claim reflected by the affidavit must serve a copy of the counteraffidavit. . . .”).  In the absence of a counteraffidavit, the medical records affidavits suffice to support a fact finding regarding the reasonableness and necessity of Valadez’s medical expenses.  
See id.
 §18.001(e); 
Owens v. Perez ex rel. San Juana Morin
, 158 S.W.3d 96, 110 (Tex. App.—Corpus Christi 2005, no pet.). 

Valadez testified that when he fell in the hole left by SWBT, he fell on his right knee, left shoulder, and face.  His knee was examined and was determined to be fine.  But his left shoulder was causing him great pain, and he was ultimately diagnosed with a torn rotator cuff in his left shoulder, which required surgery and therapy.  Valadez testified that, prior to his fall in the hole, he had no stiffness, pain, or mobility problems with his left shoulder; he was not getting any therapy or treatment for his left shoulder; and he did not have any kind of surgery scheduled for his left shoulder.  After the fall, he experienced all of these.  Valadez specifically testified that he did not seek medical treatment for his left shoulder as a result of the minor “hit and run” accident he experienced prior to his fall in SWBT’s hole. 

In three interrelated subissues, SWBT contends that Valadez “did not establish that the incident, which is the basis of this lawsuit, caused his torn rotator cuff, and therefore the medical damages he sought at trial,” “did not establish a sequence of events that produce[d] a strong, logically traceable connection between the incident which is the basis of this lawsuit and his alleged injuries,” and “failed to introduce competent evidence establishing a causal link between his medical billing affidavits and the incident which is the basis of this lawsuit.”  As we have mentioned, Valadez specifically testified that his fall into SWBT’s hole caused him severe pain in his left shoulder.  On the day of the fall, Valadez sought treatment in the emergency room for his left shoulder; he was referred to an orthopedic surgeon, an MRI was performed, and Valadez was diagnosed with a torn left rotator cuff, which was subsequently surgically repaired.  Instead of filing counteraffidavits, SWBT relied upon the testimony of an expert it called via deposition, Dr. Van Hal.  Although Dr. Van Hal opined that the condition in Valadez’s left shoulder was “degenerative,” he conceded that Valadez’s rotator cuff tear could have been asymptomatic prior to the fall and have been “exacerbate[d]” and become symptomatic as a result of the fall.  To the extent, if any, that Dr. Van Hal’s testimony could be construed to limit Valadez’s past medical expenses for his left shoulder, we note that it is the jury’s role to judge the credibility of the evidence, to assign the weight to be given to testimony, and to resolve inconsistencies within or conflicts among the witnesses’ testimony.  
See Owens
, 158 S.W.3d at 110.  Applying the appropriate legal and factual sufficiency standards of review, this evidence is legally and factually sufficient to causally link all Valadez’s medical expenses for the care and treatment of his left shoulder, as set forth in portions of the medical records attached to the medical records affidavits, to SWBT’s negligence as found by the jury.  
See, e.g.
, 
Guevara v. Ferrer
, No. 05-1100, 50 Tex. Sup. Ct. J. 1182, 1187, 2007 WL 2457760, at *5 (Tex. Aug. 31, 2007) (explaining that “non-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence”); 
Byrd v. Delasancha
, 195 S.W.3d 834, 837 (Tex. App.—Dallas 2006, no pet.) (stating that the fact that the testimony of causation comes from the injured party alone does not prevent it from having probative force if given credit by the jury); 
see also Blankenship v. Mirick
, 984 S.W.2d 771, 776-77 (Tex. App.—Waco 1999, pet. denied) (holding that evidence of causation was legally and factually sufficient to support jury’s award of damages for appellee’s subsequent surgeries and treatments following automobile accident); 
City of Dallas v. Allen
, No. 05-01-00158-CV, 2002 WL 357165, at *2-3 (Tex. App.—Dallas Mar. 7, 2002, no pet.) (not designated for publication) (stating that testimony established a sequence of events which provided traceable connection between collision and condition and holding that evidence of causation was legally and factually sufficient to support jury’s award of damages based on injury to appellee’s elbow).

By way of a post-submission brief, SWBT cites and relies upon the supreme court’s 
Guevara 
decision for the proposition that the evidence here is insufficient to causally link Valadez’s medical expenses to SWBT’s negligence.  
See
 2007 WL 2457760, at *5.  In 
Guevara
, the supreme court held that, based on the particular facts presented in that case, expert testimony was required to support a finding that an automobile accident caused over $1 million of medical expenses for at least two abdominal surgeries; three separate confinements in health care facilities; a great variety and quantity of pharmaceutical supplies, medicines, and drugs; physical therapy; and other expenses.  
Id. 
at *1, 5.  The supreme court in 
Guevara
, however, expressly refused to hold that such expert medical testimony is required in every personal injury case:

Undoubtedly, the causal connection between some events and conditions of a basic nature (and treatment for such conditions) are within a layperson’s general experience and common sense.  This conclusion accords with human experience, our prior cases, and the law in other states where courts have held that causation as to certain types of pain, bone fractures, and similar basic conditions following an automobile collision can be within the common experience of lay jurors.

Id.

Here, Valadez proved that he fell in a hole in his yard that had been made and left unfilled by SWBT.  Upon regaining consciousness after the fall, Valadez immediately felt pain in his left shoulder.  Valadez and his wife both testified that prior to the fall he had normal, painless use of his left shoulder and that after the fall he experienced pain in his left shoulder and needed surgery on it.  Thus, the causal connection here between the event—Valade’z falling into the hole in his backyard that jury found was negligently made and left unfilled by SWBT—and the immediate pain in his left shoulder—for which he sought treatment, evaluation, and X-rays the day of the fall—is within a layperson’s general experience and common sense.  And Valadez—unlike Guevara—does not seek recovery of $1 million in medical expenses for surgeries to areas and organs other than his left shoulder.  As more fully explained below, Valadez specifically requested recovery from the jury of only the past medical expenses related to his initial evaluation after the fall and to his left shoulder.  The supreme court’s holding in 
Guevara
 is consistent with our holding here that the evidence is legally and factually sufficient to support the jury’s finding that Valadez incurred $25,000 in past medical expenses for the treatment of his left shoulder and that this treatment was necessary as a result of Valadez’s fall into the hole negligently left unfilled by SWBT.  We therefore overrule SWBT’s subissues (i), (ii), and (v) under its first issue.

SWBT next argues that “when the medical expenses [Valadez] testified were unrelated to the incident which is the basis of this lawsuit [are subtracted from the total], the total is less than the jury’s past medical expense award”; and that “the remaining medical expenses are intertwined such that it is impossible to determine which charge relates to which of [Valadez’s] injury incidents.”  Starting with the total of $60,406.82 reflected in Valadez’s medical billing affidavits, SWBT argues that at most, only $22,151.85 of this amount was linked to his left shoulder injury and that, thus, the jury’s award of $25,000 is not supported by legally and factually sufficient evidence.  We disagree.

Valadez repeatedly testified that he was seeking past medical expenses from SWBT only for the injuries he sustained in the fall to his left shoulder and that he was not seeking recovery for expenses associated with the April 23, 2003 re-injury to his left shoulder that occurred when the rubber peeled off the bottom of his Bledsoe boot.  But, contrary to SWBT’s position that April 23, 2003 is a bright-line cutoff date after which Valadez did not seek recovery of any past medical expenses, Valadez testified that he 
was
 seeking recovery for the therapy expenses he incurred, even after the April 23, 2003 date, because he would have had to obtain that therapy on his left shoulder regardless of the re-injury.  Valadez testified:

Q. The damages you’re seeking from Southwestern Bell relate to the period [of] February 11
th
, 2003 until April 23
rd
, 2003?

A. No, sir.

Q. Which damages after April 23, 2003 are you asking the jury to award you?

A. Therapy, medical visits, pain and suffering through that time I was - - I had the initial surgery and the initial problems and February 11
th
.

While at other places in the record, Valadez appears to equivocate on this point, it was for the jury to evaluate his testimony and the evidence and to determine the weight to attach to it.  
See, e.g., Bossier Chrysler-Dodge II, Inc. v. Riley
, 221 S.W.3d 749, 756 (Tex. App.—Waco 2007, pet. denied) (holding that, despite internal inconsistencies in appellee’s own testimony about the nature of the representations that appellant had made and after deferring to jury’s resolution of the issue which turned on conflicting evidence and witness credibility, evidence was factually sufficient to support finding that appellant made actionable misrepresentations); 
Ardoin v. Walker
, 466 S.W.2d 595, 597  (Tex. Civ. App.—Houston [14th Dist.] 1971, no writ) (stating that, “While the testimony on vital points in this case is in direct conflict, it is within the province of the jury to resolve conflicts and inconsistencies in the testimony of a witness or between witnesses” and that such rule is “so well established that citation of cases seems to be unnecessary”).

The supreme court held in 
Texarkana Memorial Hospital, Inc. v. Murdock
, 946 S.W.2d 836, 839-40 (Tex. 1997), that a plaintiff should only recover for past medical expenses arising from treatment necessitated by the defendant’s negligence.  Here, Valadez sought recovery from SWBT for only past medical expenses arising from treatment he received in the emergency room the day of the fall and for the injury to, treatment of, surgery on, and therapy on his left shoulder, an injury caused by SWBT’s negligence.  Consequently, this is not a case like 
Murdock
 in which the plaintiff is seeking recovery of all of his medical expenses, even those not necessitated by the injury attributable to the defendant’s negligence.  
See id. 
 Although the medical records affidavits filed by Valadez established reasonable and necessary medical expenses in the amount of $60,406.82, Valadez asked the jury to award him only those amounts attributable to his initial emergency room visit for the fall and to the care for his left shoulder.  Thus, the testimony and evidence presented here complies with the principles enunciated in 
Murdock
.

SWBT points out that on cross-examination, Valadez was unable to segregate in dollar amounts the portion of the past medical expenses reflected in each of the five medical records affidavits as being attributable to his fall in SWBT’s hole.  But Valadez did testify to most of these amounts on direct examination.  And, moreover, it is clear from the content and dates of the entries in most of the records whether the particular treatment was related to Valadez’s shoulder, and the jury was capable of examining the records and making this determination for itself.  
See Republic Bankers Life Ins. Co. v. Pruitt
, 495 S.W.2d 587, 591 (Tex. Civ. App.—Amarillo 1973, writ ref’d n.r.e.) (concluding that jury’s findings were not contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong after stating that, “[I]t is apparent that the jury opted to believe such portions of the evidence, including testimony, medical records, and inferences therefrom, leading to the conclusion that the cause of the illness resulting in the hospitalization and surgery here involved was . . . an illness originating after November 1, 1968”).  For these reasons, we overrule SWBT’s subissues (iii) and (iv) under its first issue and overrule SWBT’s first issue in toto.

C. Past Physical Impairment

In its second issue, SWBT challenges the legal and factual sufficiency of the evidence to support the jury’s award of $5,000 in past physical impairment damages.  ”[P]hysical impairment must be substantial and extend beyond any pain, suffering, mental anguish, lost wages[,] or diminished earning capacity.”  
Golden Eagle Archery, Inc. v. Jackson
, 116 S.W.3d 757, 772 (Tex. 2003).  A broad range of limitations on physical activities have been upheld as compensable physical impairments.  
See Patlyek v. Brittain
, 149 S.W.3d 781, 787 (Tex. App.—Austin 2004, pet. denied) (discussing examples of injuries or limitations that have been held to be legally sufficient evidence of physical impairment, including difficulty eating and communicating with others; continuing inability to sleep due to sharp pains; inability to run, bicycle, participate in triathlons, and play with children; past inability to walk and future difficulties in running, standing, and climbing; inability to ascend or descend stairs or kneel and difficulty in standing for long periods of time; loss of seventy-five percent of strength in left arm, which subsequently contributed to plaintiff’s falling, breaking her leg, and being confined to a wheelchair; and difficulties performing yard work, car maintenance, and playing racquetball).

Here, Valadez testified that after his left shoulder injury he could not dress or bathe himself.  He explained that he could no longer help out around the house by washing clothes, folding clothes, making the bed, washing the dishes, or putting up the dishes.  Mrs. Valadez likewise testified that after her husband fell in the SWBT hole and hurt his left shoulder, he was no longer able to do these things.  When Valadez completed his therapy on his left shoulder, he gradually became able to accomplish these tasks again.  Applying the appropriate standards of review, we hold that this uncontroverted testimony is legally and factually sufficient to support the jury’s award of $5,000 in past physical impairment damages.  
See, e.g., Patlyek
, 149 S.W.3d at 787 (upholding $6,000 past physical impairment jury award and citing other cases holding likewise).  We overrule SWBT’s second issue.

D. Past Physical Pain and Suffering

In its third issue, SWBT challenges the legal and factual sufficiency of the evidence to support the jury’s award of $15,000 in past physical pain and mental anguish damages to Valadez.  The process of awarding damages for amorphous, discretionary injuries such as mental anguish or pain and suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss.  
Dawson v. Briggs
, 107 S.W.3d 739, 750-51 (Tex. App.—Fort Worth 2003, no pet.); 
Dollison v. Hayes
, 79 S.W.3d 246, 253 (Tex. App.—Texarkana 2002, no pet.).  The process is not readily susceptible to objective analysis.  
Dawson
, 107 S.W.3d at 750-51.  The presence or absence of pain, either physical or mental, is an inherently subjective question.  
Id
.

Valadez testified that after he fell in SWBT’s hole, he experienced “bad” pain in his left shoulder and stated, “I’ve never felt pain like that in my life.”  He said that the pain continued to get worse until he went to the emergency room for treatment.  Up until Valadez saw the orthopedic surgeon, around a week to ten days after the fall, the pain did not improve; he said that the pain “hadn’t gotten any better and the pain was still there.”  About a week later, the orthopedic surgeon told Valadez that the results of his MRI showed that he needed surgery.  He had surgery approximately two to three weeks after the MRI, which was approximately one month after the fall.  Valadez was “still in a lot of pain” after the surgery.  He could not move his shoulder.  Valadez testified that he “had a lot of pain” during therapy on his shoulder and that it was “excruciating pain.”  Viewing this testimony under the appropriate standards of review, we hold that the evidence is legally and factually sufficient to support the jury’s award of past physical pain and mental anguish to Valadez.  
See, e.g., Gibbins v. Berlin
, 162 S.W.3d 335, 345 (Tex. App.—Fort Worth 2005, no pet.) (holding that evidence was legally and factually sufficient to support jury’s award for past and future physical pain and mental anguish as to appellees following assault); 
Wal-Mart Stores, Inc. v. Hoke
, No. 14-99-00503-CV, 2001 WL 931658, at *10-12 (Tex. App.—Houston [14th Dist.] Aug. 16, 2001, no pet.) (not designated for publication) (holding that evidence was legally and factually sufficient in personal injury suit to support jury’s award for past physical pain and mental anguish as to appellee).

We overrule SWBT’s third issue. 

IV.  New and Independent Cause

SWBT claims in its fourth issue that the trial court erred by refusing to instruct the jury on new and independent cause.  “A new and independent cause is one that intervenes between the original wrong and the final injury such that the injury is attributed to the new cause rather than the first and more remote cause.”  
Dew v. Crown Derrick Erectors, Inc.
, 208 S.W.3d 448, 450 (Tex. 2006); 
Darwin v. Fugit
, 914 S.W.2d 621, 626 (Tex. App.—Fort Worth 1995, writ denied).  The intervening cause relieves the original wrongdoer of liability for negligence because the intervening negligence destroys “the causal connection between [the original] negligence and the plaintiff’s injury[.]”  
Dew
, 208 S.W.3d at 450 (holding that removal of an inadequate rope barrier around an open hole in the floor of oil platform was foreseeable intervening force so that platform erector was not entitled to new and independent cause jury instruction).  The purpose of a new and independent cause instruction is “to advise the jurors, in the appropriate case, that they do not have to place blame on a [particular defendant] to the suit” if the true cause for the accident lies elsewhere.  
Dillard v. Tex. Elec. Coop.
, 157 S.W.3d 429, 432 (Tex. 2005).  

Here, SWBT claims that the re-injury of Valadez’s left shoulder—that occurred when he slipped on April 23, 2003, as a result of the rubber peeling away from the bottom of his Bledsoe boot—was a new and independent cause of Valadez’s left shoulder injuries.  But Valadez stipulated that he was not asking the jury to award him damages for anything (physical pain, past physical impairment, or past medical expenses) after April 23, 2003, except for the physical therapy he underwent after that date because that therapy was required as a result of his surgery prior to that date.  And the trial court’s damage question to the jury instructed, ”Do not include any amount for any condition not resulting from the occurrence in question.”  Consequently, SWBT’s concerns—that it would improperly be held responsible for additional damages Valadez experienced as a result of the April 23, 2003 re-injury to his left shoulder—were adequately addressed both in Valadez’s stipulation presented in front of the jury and in the court’s charge.

Unless the record demonstrates otherwise, we must presume that the jury followed the trial court’s instruction to “not include any amount for any condition not resulting from the occurrence in question,” i.e., to not include any amount for any condition resulting from the April 23, 2003 slip.  
See, e.g., Golden Eagle Archery, Inc.
, 116 S.W.3d at 771; 
Turner, Collie & Braden, Inc. v. Brookhollow, Inc.
, 642 S.W.2d 160, 167 (Tex. 1982); 
Tesfa v. Stewart
, 135 S.W.3d 272, 278-79 (Tex. App.—Fort Worth 2004, pet. denied);
 Rendon v. Avance
, 67 S.W.3d 303, 310-11 (Tex. App.—Fort Worth 2001, pet. granted, judgm’t vacated w.r.m.)
.  SWBT does not point to any evidence in the record, and we have located none, rebutting the presumption that the jury followed the instruction given in the court’s charge telling them to not include as damages any amount for any condition not resulting from the occurrence in question. 
 See, e.g., Tesfa
, 135 S.W.3d at 278-79.  We overrule SWBT’s fourth issue.

V.  Motion for Directed Verdict and Motion for JNOV

In its fifth and sixth issues, SWBT contends that the trial court erred by denying SWBT’s motion for directed verdict and JNOV, respectively, because “there was no competent evidence of a causal nexus between the alleged incident and the medical expenses Appellee sought to recover” and because “Appellee failed, however, to offer any competent evidence demonstrating that any act or omission of Appellant was a direct and proximate cause of any of his alleged damages.”  

A JNOV is proper when a directed verdict would have been proper.  
Tex. R. Civ. P.
 301; 
Fort Bend County Drainage Dist. v. Sbrusch
, 818 S.W.2d 392, 394 (Tex. 1991).  We review a trial court’s decision to deny a motion for a directed verdict and a motion for JNOV under the legal sufficiency standard of review.  
See Brown v. Bank of Galveston, Nat’l Ass’n
, 963 S.W.2d 511, 513 (Tex. 1998), 
abrogated on other grounds by Ford Motor Co. v. Ledesma
, 51 Tex. Sup. Ct. J. 250, 2007 WL 4465732 (Tex. Dec. 21, 2007).  That is, a trial court properly denies a motion for a directed verdict and a motion for JNOV if, looking at all the evidence in the light most favorable to the fact challenged or the finding found by the jury, a reasonable trier of fact could have formed a firm belief or conviction that the fact or finding was true.  
City of Keller
, 168 S.W.3d at 822.  We have already, in our analysis and disposition of SWBT’s first issue and its subissues, held that the evidence presented is legally sufficient to establish a causal nexus between Valadez’s falling in SWBT’s hole and the left shoulder injury he suffered as a result.  Consequently, the trial court did not err by denying SWBT’s motion for directed verdict and motion for JNOV, which were both premised on the contention that there was “no evidence” of such a causal connection.  We overrule SWBT’s fifth and sixth issues.

VI.  Motion for New Trial

In its seventh issue, in a three-sentence argument in its brief, SWBT sets forth its entire argument and authorities for this issue as follows:

Appellant timely moved for new trial on the grounds set forth herein.  The Trial court denied that motion.  For the reasons set forth herein, that ruling was erroneous, and this Court should reverse the trial Court and remand for further proceedings.

We interpret SWBT’s above statement that “for the reasons set forth herein, that ruling was erroneous” to mean that for the reasons SWBT has already articulated in its brief, we should reverse the trial court’s judgment.  Because we have already addressed each of the “reasons” for reversal raised by SWBT, this seventh issue adds nothing; it presents no new basis for reversal of the trial court’s judgment.  Accordingly, we overrule SWBT’s seventh issue.

VII.  Conclusion

Having overruled each of SWBT’s issues, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: LIVINGSTON, WALKER, and MCCOY, JJ.

DELIVERED: February 14, 2008

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
SWBT does not contest this total amount but argues that the amount awarded by the jury is not supportable for the reasons itemized above.